QUINTUS TIBBS, and AMELIA J. TIBBS, his Wife, impleaded with Amelia Allen, Georgiana Allen, Onick S. Allen, Laura Allen, Frank V. Allen, and Tandy Allen, Plaintiffs in Error, *v.* CHARLES H. ALLEN, Defendant in Error.

ERROR TO SANGAMON.

Where an answer is filed for infant defendants, by one purporting to be their guardian *ad litem*, and the decree recites that he was so appointed, but the record shows no separate order of appointment, it will be presumed that the appointment was regularly made.

Where the record shows a notice by publication in a chancery cause, which recites the fact that an affidavit of the non-residence of the defendants was duly filed, but the affidavit does not appear in the record, this court will regard that recital as an official declaration by the clerk, and will presume that the affidavit was duly filed.

Where there are infant and adult defendants, and the adults alone prosecute a writ of error, they cannot assign for error those proceedings which only affect the interests of the infants.

Upon a bill for a partition brought by one of the heirs at law, in which it is suggested that the widow is entitled to dower in the lands sought to be divided, but the prayer does not ask that her dower be assigned, the court cannot decree an assignment of dower and appoint commissioners to set it off. Nor can the court give the widow an estate in fee in one-third of the land, in lieu of her life estate, for dower.

Where the affidavit and report of commissioners appointed to make partition bear date one day prior to the order of their appointment, and no specific objection is raised to this, it will be regarded as a mistake of the clerk in making up the record.

Commissioners appointed to make partition, should take the oath as provided by the statute, "to make partition in accordance with the judgment of the court as to the rights and interests of the parties." It is irregular for them to be sworn, merely to divide the land impartially.

Commissioners appointed to make partition, reported, "that from all the circumstances surrounding the pecuniary condition of the family, and the locality of the lands, they cannot be divided without prejudice to the owners." *Held*, that this report was not in conformity with the statute, and did not justify the court in ordering a sale of the lands.

A bill in chancery for a partition should set out the title of the petitioner, or show the interest he claims in the premises sought to be divided.

The decree in a chancery proceeding for partition, should set out the respective interests and titles of the parties, and it is error for the decree to provide for

an equal division among the defendants without finding that they have equal interests in the land.

Infants are not bound by a decree unless all of the evidence necessary to establish it, is preserved in the record.

THIS was a bill in chancery for a partition of lands, filed by the defendant in error in the Circuit Court of Sangamon county.

The opinion of the Court contains a full statement of all the points arising in the case.

J. GRIMSHAW, for the Plaintiffs in Error.

M. HAY, for the Defendant in Error.

BREESE, J. This was a petition filed in the Sangamon Circuit Court on the 11th of September, 1848, by Charles H. Allen, setting forth that the petitioner, together with Amelia Jane Tibbs, one of the plaintiffs in error here, and other persons named, were the children and heirs at law of one Tandy Allen, deceased, and Amelia Allen, his widow. That Tandy Allen was, at his death, seized of certain lands which are particularly described, situate in Sangamon county, all of which had descended to his said children, subject to the dower of his widow, Amelia Allen. The petition further states, that no partition has ever been made of the lands, and on account of the minority of most of the heirs, they are incapable of making partition. And that it is not certain from the nature and situation of the lands, that a partition can be made amongst the heirs, without prejudice to their interests, and diminishing the value of the land. The petitioner therefore prays that partition of the lands may be made by an order and decree of the court, between him and the other heirs and the widow, if it can be done without prejudice to their interest, and if partition cannot be made, that the lands may be sold and the proceeds divided amongst the petitioner and the other heirs and widow. The widow, Amelia Allen, and Amelia Jane Tibbs, with her husband, Quintus Tibbs, together with the other heirs, are made defendants, and a summons prayed to be issued against them, and " that they be compelled to answer the petition."

The petition was sworn to by Elijah Iles, on the day it was filed.

Summons was issued against the widow and heirs at law, dated on the same day, 11th September, 1848, and returned by the sheriff on the 14th, that the defendants were not found in his bailiwick.

The record then recites, that on the 11th September, 1848, there was made, and the same is now among the papers in the case, a notice and certificate of publication, which, after the statement of the venue and of the court, and the title of the cause and names of parties, is as follows : "Affidavit having been filed in the office of the clerk of the Circuit Court for the county and State aforesaid, that all of the defendants in the above entitled cause are non-residents of the State of Illinois, notice is hereby given to the said defendants, that a suit is pending in the Circuit Court in and for the county and State aforesaid, on the chancery side thereof, wherein Charles H. Allen is complainant and you are defendants ; that a subpœna in chancery has been issued in said cause, returnable on the first day of the next term of said court, to be holden at the court house in the city of Springfield, on the third Monday in the month of November, A. D. 1848, at which time and place you are required to appear," etc.    September 11, 1848.

" We certify that the attached notice was published in the Illinois Journal, a weekly newspaper printed in Springfield, Illinois, four weeks successively, the first publication being made on the 13th day of September, 1848, and the last on the 11th day of October, same year."

The record then recites, that on a subsequent day of the term there was filed in open court an answer of guardian *ad litem* as follows : " The answer of Georgiana Allen, Onick S. Allen, Laura Allen, Frank V. Allen, and Tandy Allen, by B. S. Edwards, their guardian *ad litem.* These defendants, being minors, know nothing of the facts stated in the petition, and require proof so far as proof is necessary to be made."

These are all the proceedings in the court, preliminary to the decree.    That was passed on the twenty-third of November, and is substantially as follows : The court finds the petition duly sworn to, and that notice of the petition has been duly given by publishing the same four weeks successively in the Sangamon Journal, a public newspaper printed and published in Springfield, commencing more than sixty days before the first day of the present term of the court, and Benjamin S. Edwards, who was appointed guardian *ad litem* for the defendants (naming them) who are minors, having filed the answer of said minors, and the court being satisfied that the lands in the petition mentioned (describing them) are owned jointly by the petitioners and the defendant, Amelia Jane Tibbs, (and the other defendants, naming the children,) and that the defendant, Amelia Allen, is entitled to dower in said lands.    It is therefore ordered by the court, that William

9

Butler, Erastus Wright, and Washington Iles, be appointed commissioners to make partition of said lands; that they lay off and assign to the said Amelia Allen her dower, being one-third of the land aforesaid, by metes and bonds, according to quantity and quality. And it is further ordered, that said commissioners divide said lands equally, among the other defendants, assigning to said Charles H. Allen, Amelia Jane Tibbs (and the other children, naming them) each, one equal part of said land, and that they make their report to this court.

On the next day, (Nov. 24, 1848,) the commissioners reported, prefixing to their report an affidavit, as follows: We, William Butler, Erastus Wright, and Washington Iles, commissioners appointed by the foregoing decree, do solemnly swear that we will fairly and impartially make partition of the lands in said decree mentioned, according to the rights and interests of the parties, if the same can be done consistently with the interests of the parties. Sworn to and subscribed this 22nd day of November, 1848.

The report then recites: We, the commissioners undersigned, having made ourselves fully acquainted with the following list of lands, belonging to the estate of the late Tandy Allen, deceased—(describing them)—being the same as described in the order attached hereto and forming part of this report. From all the circumstances surrounding the pecuniary condition of the family, and locality of the land, we are of opinion that said lands cannot be divided without prejudice to the interest of the owner. Given under our hands and seals, this 22nd day of November, 1848.

On the same day, 22nd November, 1848, upon the coming in of the report, this order was made:

The commissioners appointed in this case, to make partition of the lands in the petition mentioned, to wit:—(describing them)—having made their report that said lands cannot be divided without manifest prejudice to the proprietors of the same; it is therefore ordered by the court, that said lands be sold, and that Erastus Wright be appointed commissioner to sell said lands; that he sell the same at public auction, to the highest bidder, for cash in hand; that he sell the same at the door of the court house, in the city of Springfield, and that he give notice of the sale by advertising the same in some public newspaper, in Springfield, for twenty days, and that he make deed or deeds to the purchaser or purchasers, and report the same to this court.

No other order appears until at the March term, 1850, when an order of continuance was entered—and no other order in

the cause, until March term, 1852, when the following order was entered : " Ordered, by the court, that this cause be stricken from the docket."

The foregoing is a full abstract of the whole record in this cause, on which the plaintiffs in error have assigned these errors :

First.   In permitting the answer of guardian *ad litem* to be filed for minors without order appointing guardian.

Second.   In rendering a decree for partition and sale, without service of process or affidavit of non-residence, and due publication of notice on such affidavit.

Third.   In rendering decrees against defendants for partition and sale, without notice, either actual or constructive, to defendants, of pendency of suit.

Fourth.   In rendering decrees against minor defendants, without proof of truth of allegations contained in bill.

Fifth.   In ordering commissioners to assign dower to Amelia Allen, widow, when bill contained no prayer, either general or special, for such assignment of dower.

Sixth.   In ordering partition of land amongst heirs of Tandy Allen, and assignment to Amelia Allen, widow, her dower being one-third of lands, thereby giving to widow one-third in fee instead of use of one-third for life.

Seventh.   In decreeing a sale upon an insufficient report of commissioners.

Eighth.   In decreeing a sale upon a report which showed that commissioners did not go upon premises, and in which they do not report that premises are so situated that partition cannot be made, but only that " from circumstances surrounding the pecuniary condition of the family, and the locality of the land, such lands cannot be divided."

Ninth.   In ordering partition and sale without fully adjudicating upon rights of all parties to suit.

Tenth.   Ordering partition and sale, and establishing interest of Amelia Allen, widow, to be one-third, when by law her share was a mere dower interest.

Eleventh.   Ordering a sale as well for benefit of Amelia Allen, the doweress, as of the other parties, instead of ascertaining the yearly value of such dower, and ordering a sale, subject to such yearly value.

Twelfth.   Ordering a sale without disposing of the interest of Amelia Allen, the doweress.

Thirteenth.   Error assigned by leave :   In rendering decrees in the cause, either against minors or adults, without preserving in record the evidence upon which such decrees are based.

We will dispose of the errors in the order in which they are assigned.

The record does not show by any separate order entered therein, that a guardian *ad litem* was appointed by the court, as the statute in such cases imperatively requires. (Scates' Comp. 160, Sec. 6 ; ib. 155; Sec. 22.) An answer, however, by a person styling himself guardian *ad litem* and assuming that character, appears in the record, and he is recognized by the court, as such, in the decree. It may happen that the clerk will omit entering upon his minutes, this preliminary proceeding, and we see no reason why it may not be supplied by the recital in the order of the court. The court certainly knew Mr. Edwards was acting as guardian *ad litem*, and with that knowledge recognized his authority. The record states the fact that he was appointed, and that must be held equivalent to a formal appointment, for it is but a form, the infants being in no way affected by the answer of the guardian. In the case of *Cost* v. *Rose*, 17 Ill. 277, it appears that the answer of a person assuming to act as guardian *ad litem* was put in, after a default had been taken against all the defendants, and without any formal appointment by the court. This was clearly irregular, as the bill then stood as confessed. That case did not go off upon that ground, nor do we think had the answer of the guardian *ad litem* been put in before the default, and recognized by the court as the answer, that it would have been deemed such an irregularity as to reverse a decree. That case was reversed for want of a sufficient return of service of summons, and because the commissioners made partition of a tract of land not in the petition, and the court approved it. The appointment is one, more of form than substance, and so long as the court sees the interests of minors have been attended to, by a competent person assuming to act as guardian *ad litem*, and as his acts do not bind the infants, and he is recognized by the court, we should not deem it such an irregularity as should reverse a decree, regular in all other respects.

The second and third errors assigned, bring before us the notice of the pendency of the suit. This is a jurisdictional fact, and lies at the foundation of the case, the rule being that no party can be bound by a judgment or decree, who never had notice of the proceeding, either actual or constructive. The record shows affirmatively, that a subpœna was issued, and returned *non est*, and a notice published in the Illinois Journal, a public newspaper, printed at the place of holding the court, the number of weeks required by law, and in the time required. This notice takes the place of process, and is

furnished to the newspaper by the clerk, and is his act. In the notice, it is recited that, "Affidavit having been filed in the office of the clerk of the Circuit Court, for the county and State aforesaid, that all of the defendants in the above entitled cause, are non-residents of the State of Illinois : Notice is hereby given," etc.

The affidavit does not appear in the record. It is a loose paper in the cause, quite liable to be lost or mislaid, and we should be very unwilling to reverse a decree or judgment if it did not appear in the record, when the clerk has affirmed, in his official character, that the affidavit was filed in his office, and the fact is so recited in the record. We must place reliance on the official acts of the clerk, and on his official declarations, and we must presume something to sustain his acts. It is his duty to require the affidavit—he states in the notice it was filed in his office, and we must take the fact to be so, unless the contrary shall be made to appear. The presumption must obtain, from all that appears on the record, that the required affidavit was made, and that the defendants were properly before the court by the published notice. The certificate of the publisher of the paper may well be likened to the return of an officer. Great loss might result to parties, if the affidavit of non-residence, in a case like this, could not be produced after the lapse of years. The case of *Randall* v. *Songer,* 16 Ill. 28, does not disturb this view of the question. In that case, the record recited only that, "it appears to the satisfaction of the court, that due notice has been given by publication of the pendency of this suit." Neither a summons or advertisement was shown in that case ; here, both are found in the record.

The writ of error being prosecuted by two of the adult defendants only, we do not well see how they can assign as error, such proceedings of the court as affect the infant defendants. When they complain, we will consider the errors affecting them, should there be any. "Sufficient unto the day, is the evil thereof." The plaintiffs in error cannot be injured by any proceedings against the infants, however, irregular they may have been, and therefore we consider the fourth error not well assigned.

The fifth error assigned, questions the correctness of that part of the decree which directs the commissioners to assign to the widow her dower in the lands, the bill containing no prayer to that end.

Other errors are assigned upon this order of the court, being the sixth, tenth, eleventh and twelfth, which we will dispose of together.

The bill is for partition only, with a suggestion of the petitioners, that Amelia Allen, the widow, is entitled to dower in the lands sought to be divided, but there is no averment that she claims dower, and no prayer that her dower be set off and assigned to her.

The court finds, upon what proof we do not know, as none is preserved in the record, that the widow was entitled to dower in all the lands described in the petition, and the commissioners appointed to divide the lands among the heirs at law, were ordered, in addition, " to lay off and assign" to her, " her dower, being one-third of the lands aforesaid, by metes and bounds, according to quantity and quality." On a bill for mere partition among the heirs at law of a decedent, without any prayer that dower be assigned the widow, we know of no law or practice authorizing the court to decree an assignment of dower, and appoint commissioners to set it off to her. Nor do we recognize the propriety of a decree which shall, on such a petition, assign to the widow as her own absolutely, one-third of the lands, dividing the residuum among the heirs at law. A proceeding in partition in chancery may undoubtedly contain a prayer for the assignment of dower to the widow, and if the court adjudges that she shall have her dower, it must be so entered of record, together with a description of the land out of which she is to be endowed, and the commissioners appointed to make partition, and assign dower, and so sworn, can set off to the widow her dower, by metes and bounds, according to the judgment of the court, which she can hold and enjoy during her natural life, and at the same time, allot and set off to each owner his proper share, according to quantity and quality, every one of which shares may be incumbered by the dower interest in it, set off to the widow. If, however, the commissioners report, the lands cannot be divided without great injury thereto, nor the dower set off by metes and bounds, the court then directs the yearly value of the widow's dower to be ascertained by a jury empannelled and sworn for that purpose, and their finding is a yearly charge upon the lands during her natural life, and that the lands be sold, subject to this charge. (Scates' Comp. 156, Sec. 28.) It was error in the court to decree, on this petition, to the widow one-third of the land absolutely, but no injury resulted from this, because the commissioners were not sworn to set off and assign the widow's dower, nor did they do so. The estate of the plaintiffs has not been lessened in any degree, nor in any manner affected by this portion of the decree determining the widow's dower, or in ordering a sale without regard to it; they therefore cannot complain if there be error therein.

The seventh and eighth errors, assigned, question the report of the commissioners, as not in conformity to the statute under which they were appointed to act.

The ninth section of the act regulating partition, provides, when the court shall order a partition, it shall appoint three disinterested commissioners, each of whom shall take an oath fairly and impartially to make partition in accordance with the judgment of the court, as to the rights and interests of the parties, if the same can be done consistently with the interests of the estate, and the said commissioners shall go upon the premises and make partition of said lands, tenements and hereditaments, assigning to each party his or her share by metes and bounds ; and may make report, etc.

It is provided by section eleven, when any lands, etc., are so circumstanced that a division cannot be made without manifest prejudice to the proprietors, and the commissioners shall so report to the court, the court shall thereupon give an order to the same commissioners, or other person or persons, to sell such lands, etc., and make report. (Scates' Comp., ch. 79, page 161).

It may be objected, that the commissioners did not take the oath prescribed by the statute. They were not sworn to make partition, "in accordance with the judgment of the court as to the rights and interests of the parties," but only sworn to divide the land according to their own opinions of those rights and interests, without regard to the judgment of the court. It may be remarked here too, that the affidavit of the commissioners, and their report, bear date one day prior to their appointment—their appointment by the decree having been made on the twenty-third of November, whilst the affidavit, and report, bear date the twenty-second of that month. But no point is made on this, and we will assume there is a mistake by the clerk in making up the record.

But now, as to the report itself. It seems to us so objectionable, as to preclude the right to ask for, and obtain an order of sale upon it. It fails to come up to the reasonable requirements of the statute, in the most important particulars.

It does not state, they went upon the premises they were required to divide—it does not state they had such a personal knowledge of the lands, and of such tract, as to render it unnecessary to comply, strictly, with the statute—it does not state that the lands, and each tract thereof, are so circumstanced that a division could not be made without manifest prejudice to the proprietors of the land, nor does it contain a syllable or word respecting the circumstances which might prevent a division.

They report merely, that from all the circumstances surrounding the pecuniary condition of the family and locality of the lands, they cannot be divided without prejudice to the interests of the owners. We infer from this, that the lands were unimproved, yielding no income to the family, and that money was needed for their support, and being in a good "locality," near the city of Springfield, they would bring money if offered for sale. The court was not justified in ordering a sale on such a report as this. It is not only, not in accordance with the statute, but in the face of the statute. The pecuniary condition of the family and the locality of the land are not elements to be regarded by sworn commissioners appointed to divide the land. The case shows there were, including the petitioner, seven heirs at law of Tandy Allen, each one supposed to have an equal interest in those lands, the whole subject to the dower of the widow. It appears there were eight tracts of land to be divided, containing, in the aggregate, seven hundred and twenty acres, all in a rich and populous neighborhood, and near the city of Springfield. It would require much proof to induce the belief that so much land could not be divided fairly and equally, according to quantity and quality, among seven claimants. We are justified in believing, that it was not the real design of the proceeding in partition that the lands should be divided, the report of the commissioners informing us, that the pecuniary condition of the family was such,—or in other words, some one or more members of the family were so much in want of money,—that it was necessary, in order to supply the want, to bring these rich and valuable lands to the hammer. There is no law for it, nor justice in it, and a sale should not have been ordered on this report.

When it is considered, that titles to valuable lands can be divested by this statutory proceeding, it is essential the statute should be observed, the courts not tolerating any essential departure from it. In this case it seems to have been wholly disregarded.

It is also objected, that the court did not ascertain and declare the rights, titles and interests of the parties by the decree, nor is the evidence shown, on which the decree was based. It might be said also, that the petitioner did not set out his title in the petition, or make exhibits of any rights and titles the defendants may have claimed to possess to the lands. The decree finds nothing proved—not even heirship of the parties, nor the interests of the several parties, by any evidence in the record. The court orders that the lands be divided equally among the defend-

ants, after taking out one-third as dower of the widow, there being nothing in the record to show, they were entitled equally. The whole proceeding is defective. The infant heirs were not bound by the decree, for no proof was made of the truth of the bill as to them, which has been always held to be necessary, as against them. *McClay* v. *Norris*, 4 Gilman, 385; *Carr* v. *Fielden*, 18 Ill. 18, and cases there cited. The circumstances requiring a sale of the lands, were not such as the statute regards. By the decree, the widow is given one-third of the land absolutely, when by law, she is entitled only to a life estate in one-third. The decree does not find the interests of the several parties. *Greenup* v. *Sewall*, 18 Ill. 53; *Herdman* v. *Short*, ib. 59. For these errors, the decree must be reversed, and the cause remanded.

*Judgment reversed.*