## GEORGE BENNETT *et al.*

*v.*

## NEHEMIAH MATSON.

1. STATUTE OF FRAUDS — *performance of a parol contract within a year.* At the time of a sale under a decree of foreclosure obtained by a prior mortgagee, of two parcels of land, such mortgagee and a junior mortgagee of the same premises, who was a party to the proceeding for foreclosure, made a parol agreement that the prior mortgagee should bid the amount then due him on one of the parcels of land, and if the sale should not be redeemed from, the junior mortgagee was to have the other parcel discharged from the lien which had been reserved in the decree in favor of the prior mortgagee for a portion of his debt which was not yet due, the junior mortgagee to pay the costs of the suit for foreclosure, and one half of the solicitor's fee therein. Within a year from the time this agreement was made, the sale took place, the prior mortgagee bidding the whole amount due him upon one parcel, as agreed, and the junior mortgagee becoming the purchaser of the other parcel for the costs. It was *held*, that, as between the parties, this was a consummation of the agreement within a year, and therefore it was not within the statute of frauds, notwithstanding it might be defeated by a redemption thereafter to be had.

2. NOTICE — *what circumstances will put one upon inquiry as to another's equities.* A purchaser of a decree of foreclosure from a prior mortgagee, in whose favor it was rendered, is put upon inquiry as to the nature and extent of a junior mortgagee's equities arising out of a parol agreement previously made between the two mortgagees, by the fact, that such junior mortgagee was a party to the decree.

3. PURCHASER *under a decree of foreclosure — when entitled to possession.* A purchaser at a sale, under a decree of foreclosure, is not entitled to possession, under our statute allowing redemption from such a sale, until a deed has been executed to him by the officer selling; and a decree of foreclosure which provides for putting the purchaser in possession before that time is erroneous.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. M. WILLIAMSON, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. STIPP & GIBONS, and Messrs. ECKLES & KYLE, for the plaintiffs in error.

Messrs. FARWELL & HERRON, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited by Nehemiah Matson, in the Bureau Circuit Court, against George Bennett, Arvis Chapman, Claramon Flint, Willard Shumway, John Whittington, James T. Stevens and William Hall Jenkins, to foreclose a mortgage. The bill was filed July 15, 1861. The prominent facts of the case are these: George Bennett was the owner of two certain tracts of land, particularly described, situate in the county of Bureau. On the 31st of August, 1854, Bennett conveyed both tracts to John Whittington, who, on the same day, mortgaged the same to Bennett to secure the sum of eighteen hundred dollars, which mortgage was duly recorded.

On the 12th of November, 1856, Whittington sold and conveyed the lands to Willard Shumway, who, on the same day, executed a mortgage thereon to Whittington to secure the sum of eleven hundred and forty dollars, he having paid in part, purchase-money amounting to seven hundred dollars. Afterward, on the 8th of December, 1857, Shumway and wife conveyed the premises by deed of that date, to John Whittington, for the consideration of twelve hundred dollars, which was duly recorded, December 18, 1857.

On the same 12th of November, 1856, Shumway being indebted to Matson, the complainant, by note of that date, in the sum of $603.64, due in one year at ten per cent interest, and being indebted to one Joseph Mercer, by note of the same date, in the sum of $236.64 due in one year with ten per cent interest, which note was afterward assigned to Matson, executed to Matson a mortgage upon the premises, bearing date November 12, 1856, to secure these notes, which mortgage was duly recorded on the same day of its execution. The mortgage to Whittington from Shumway was recorded November 13, 1856.

On the 14th of May, 1860, for the consideration of three thousand dollars expressed in the deed, Whittington and wife conveyed the premises, by quitclaim deed of that date, to Claramon Flint, which deed was duly recorded, May 29, 1860.

At the December Term, 1859, of the Bureau Circuit Court, Bennett filed his bill against Matson and the others, to foreclose his mortgage, and a decree passed in his favor against all of the premises, and the master in chancery was ordered to sell so much of the same as would be sufficient to pay the amount then due and costs, which amount was found to be four hundred and sixty-two dollars, subject to the amount of four notes of two hundred dollars each, and interest from May 20, 1854, not then due, and the master was required to make a certificate of purchase to the purchaser, conditioned that he should have a deed subject to the lien of the mortgage for the notes not then due, at the end of fifteen months, if the premises were not redeemed. For convenience, the premises are called in the pleadings, the "north eighty," and the "south eighty."

The master made the sale, and Bennett became the purchaser of the south eighty for $466.05, from which there was no redemption, and he received a deed. The north eighty and a ten acre tract, were sold to Matson for the costs. The sales were made subject to the lien of the mortgage for the notes not then due.

It is alleged, by Matson, in his bill of complaint, that, at the

time of the sale under the decree, it was agreed between him and Bennett, that Bennett should bid the amount then due him upon the south eighty, and if the sale was not redeemed from, Matson was to have the north eighty discharged from the lien of the mortgage for the notes not then due, and Bennett was not to assert any right to the north eighty under his mortgage and decree, and Matson was to pay, and did pay, the costs of the proceeding, amounting to about forty dollars, and also one-half of Bennett's solicitor's fees.

Claramon Flint, the grantee of Whittington, redeemed the north eighty from this sale to Matson, he receiving the redemption money.

Matson alleges, in his bill, that, in consequence of this agreement with Bennett, that he would look alone to the south eighty for his debt if it was not redeemed, and leave the north eighty to complainant, on which alone, his mortgage was a lien, he did not appear in Bennett's foreclosure suit, made no defense, and allowed his default to be entered. He avers that the south eighty is amply sufficient to pay Bennett his entire claim, and he insists that this eighty should be first exposed to sale for the unpaid balance of the indebtedness to Bennett, and on which he, Matson, is willing to bid the whole amount of such balance if necessary.

The bill also alleges, that, after Bennett obtained the master's deed for the south eighty, he assigned to Arvis Chapman his remaining interest in the decree of foreclosure, for which complainant alleges Chapman paid nothing, and that it was for the benefit of Claramon Flint and James T. Stevens, from whom the consideration moved, and that the assignment was made with notice of the complainant's equities.

The bill then avers that Chapman and Stevens are threatening a further sale under Bennett's decree, of the north eighty, which it is alleged is worth no more than complainant's debt, and that the Bennett mortgage is the only lien on the south eighty, and that it is ample security for the whole debt. Shumway is alleged to be insolvent. George Bennett, Shumway, Claramon Flint, James T. Stevens, Arvis Chapman and

John Whittington are made defendants, and the prayer of the bill is, that they answer not under oath, and that a decree of foreclosure be passed in favor of complainant, and a sale of the premises be ordered without redemption, and that complainant's mortgage take precedence of the Bennett mortgage, and of the decree rendered thereon. That this mortgage and decree be held and adjudged to be satisfied, and that it be held for the benefit of complainant, and that Bennett and Chapman be perpetually enjoined from asserting any right under the decree as against complainant, and that they be required to complete and fully perform the agreement made between complainant and Bennett, and in case a further sale be ordered under Bennett's decree for the balance of the indebtedness, that Chapman and all others interested in the decree be required first to sell the south eighty, before proceeding against the north eighty, and for general relief.

On the 19th of July, 1861, Matson filed a supplemental bill, alleging that W. H. Jenkins, the master in chancery, was about to sell the north eighty, and that he had advertised the premises, and would sell the same on the third day of August, and that the sale was to be made under Bennett's decree, and he prayed an injunction, which was granted.

At the December Term, 1861, Whittington files his answer to both bills, which is substantially as follows:

Respondent cannot state positively whether any such agreement was made between the complainant and George Bennett, as is alleged in complainant's bill, but respondent has been informed, and believes no such agreement was ever made. He admits that he sold his interest in the premises to Claramon Flint; also, that Shumway reconveyed the premises to respondent.

At the same term of court, the defendants, James T. Stevens and Claramon Flint, two of the defendants to the original and supplemental bills, filed answers, in which they state, in substance, that if the said Shumway ever did execute the notes and mortgages mentioned in complainant's bill, the same have been long since taken up and canceled.

They admit that Whittington conveyed all his interest in the premises to the said Claramon Flint, and that the said Stevens was only acting as the agent of said Claramon; that the said Claramon purchased the premises of Whittington in good faith, and for a valuable consideration; that as such purchaser, the said Claramon, by her agent, Stevens, redeemed the premises from the sale to Matson on Bennett's mortgage, and respondents insist that the said Matson has no claim, either by mortgage or otherwise; that the said Claramon, having redeemed the premises as aforesaid, is substituted in the place of Bennett, and possessed of all his rights, subject to the lien imposed on the land to secure the other notes mentioned in Bennett's mortgage. Respondents expressly deny that any such agreement was made between Bennett and the complainant, as is mentioned in complainant's bill; on the contrary, they aver that no such agreement was made. '

They also insist, that, even if such agreement was made, the rights of the said Claramon ought not to be prejudiced thereby, as she had no notice of any such agreement, and that she redeemed from the sale in the utmost good faith. They also deny that the Bennett decree is annulled, canceled, or satisfied by virtue of the master's deed to the south eighty; that, by law, said eighties must be sold separately; and, even if the deed does extinguish the decree as to the south eighty, it can in no wise affect the lien on the north eighty.

Respondents deny that the assignment of the decree to Chapman was made at the instance of Claramon Flint and James T. Stevens, and for their benefit.

Respondents insist that the rights of the said Claramon ought not to be prejudiced by any arrangement between Bennett and Chapman.

They further insist that the complainant has no lien, legal or equitable, as against the respondent, Claramon Flint, as he was made a party to the foreclosure, and having failed to assert his claim at that time, it is now too late for him to set up his claim after the interests of innocent purchasers have intervened.

Respondents, further answering, deny that Stevens has any interest in the premises, except as the agent of the said Claramon.

Respondents admit that Bennett was the original owner of the premises, and that he deeded the same to Whittington, and that Whittington executed a mortgage on the premises to secure the purchase-money to Bennett, and on which the decree assigned by Bennett to Chapman was rendered.

They deny all the other allegations in the original and supplemental bills.

Arvis Chapman answers in substance as follows: That he has no personal knowledge of the execution of the notes and mortgage by Shumway. He admits the execution of the mortgage by Whittington to Bennett, but denies that any such agreement was made by Bennett and Matson, as in said bill alleged. But even if such an agreement was made, respondent avers that he had no notice of such agreement; that he purchased Bennett's interest in the decree in good faith and for a valuable consideration, for his own benefit, and not for the benefit of James T. Stevens and Claramon Flint, as is wrongfully alleged in the bill; that the decree was regularly assigned to this respondent by Bennett, under his hand and seal. He, further answering, says, that he had no notice of any equities of the complainant in and to the premises.

He admits that he directed the master in chancery to sell the premises in question, under and by virtue of the decree. He denies that he has two securities, as in the bill is alleged.

Respondent, further answering, says that all the other allegations in the bill not referred to, are wholly untrue.

At the same term Bennett filed his answer in substance as follows:

That it is true, as alleged in the bill, that on the 12th day of November, 1856, John Whittington executed a deed for said premises to Willard Shumway, who paid therefor to Whittington $700 at the time of such sale, and executed to Whittington a mortgage for the securing of notes to the amount of $1,140, the balance of the purchase-money; that Shumway borrowed

the money he so paid to Whittington of the complainant, Matson, and Joseph Mercer, and gave the notes and mortgage mentioned in the bill, to Matson and Mercer, they both knowing the fact of Shumway borrowing the money for the purpose of paying Whittington, and that Shumway had executed the mortgage aforesaid for the balance of the purchase-money; that Whittington did, as alleged in the bill, acquire his title to the premises of this defendant on the 31st day of August, 1854; that he paid $600 down, and for the balance of the purchase-money he executed a mortgage to this defendant for the securing of notes to the amount of $1,800, which mortgage is the senior lien on said premises.

And he, further answering, says, that although the mortgage from Shumway to Matson may have been placed on record earlier than that to John Whittington, yet Matson had knowledge and notice of the sale from Whittington to Shumway, and the mortgage from Shumway to Whittington; that it being ascertained that Shumway would not be able to meet the payment of the notes given for the balance of the purchase-money, so secured by the mortgage, it was mutually agreed between Whittington and Shumway, that Shumway should reconvey the first mentioned premises to Whittington, and accordingly on the 8th day of December, 1857, Shumway did reconvey said premises to Whittington.

Respondent, further answering, says, it is true, as alleged in the bill, that he foreclosed his mortgage against Whittington and obtained a decree as mentioned in the bill; that under the decree the master sold all of the premises, the south eighty to this defendant and the north eighty to Matson, for the consideration mentioned in the bill; that this defendant obtained a master's deed for the portion so purchased by him, and the portion so purchased by Matson was redeemed by Claramon Flint, a grantee of Whittington, who became the owner of the north eighty, subject to the provision of the decree of this defendant.

He wholly and expressly denies making any such agreement with the complainant, as in his bills alleged.

He, further answering, says that, for a valuable consideration and in good faith, he sold and assigned his interest in the decree to said Arvis Chapman. He further denies, that he was in any way obliged to hold the decree for the benefit of the complainant.

A general replication was put in to this and the other answers, and the cause set for hearing at the Special May Term, 1865, on bill, answers, exhibits and depositions and oral evidence in open court, the default of Shumway and Jenkins was duly entered and the bill taken as confessed against them. The court found that Shumway made the mortgage to the complainant, and the notes therein described, as mentioned in the bill, and that said notes and mortgage have long since been due and payable, and it appearing from the evidence, that the equities in the cause are with the complainant, and that the rights and equities of the complainant are superior to the alleged rights and equities of the defendants, or either of them, and the cause having been dismissed by the complainant as to the defendant, James T. Stevens, and the court having heard all the evidence, and after hearing the argument of counsel on the part of the complainant, and also upon the part of the defendants Bennett, Chapman, Flint and Whittington, and having taken the cause under advisement, since the last December Term of this court, and the court having fully considered the matters in controversy in the cause, did order, decree and adjudge, that the equities are with the complainant, and it was further ordered, that Willard Shumway pay to the complainant, within twenty days from the filing of this order, the amount of the mortgage and notes, being fifteen hundred and fifty-one and sixty-six one-hundredths dollars, and interest thereon at six per cent from this date, and that, in default of such payment within such time by Shumway, or any other of the defendants, the master in chancery proceed to sell the premises described in the bill, and being the same premises described in the mortgage, at the east front door of the court-house in Princeton, to the highest and best bidder therefor, for cash, after publishing a notice of the time, place and terms of such sale, for three suc-

cessive weeks prior to such sale, in a paper printed and published in Princeton, and that, at such sale, the master make to the purchaser of the premises a certificate of purchase, the same as is required of sheriffs, in selling real estate under execution, and that such sale be made subject to redemption as required by law; and it was further ordered, that the claim or lien claimed by the defendants, or any of them, under and by virtue of the decree of the Circuit Court of said county, entered in a suit in chancery, wherein George Bennett was complainant and Nehemiah Matson and others were defendants, said suit being brought to foreclose a mortgage made by John Whittington to George Bennett, be, and the same is, hereby made subordinate to the said sale; and it is further ordered, that none of the defendants shall ever hereafter set up or assert any right or equity, as against complainant, to the premises hereby ordered to be sold under and by virtue of the decree rendered as aforesaid in the Bennett foreclosure suit, and that the decree, as far as the same relates to the premises hereby ordered to be sold, was hereby discharged and satisfied and held subject to this decree; it was further ordered, that the mortgage made by Willard Shumway to John Whittington was adjudged to be satisfied and subject to the mortgage of the complainant. And it was further ordered, that the purchaser or purchasers of the premises at the sale, if any should be made, shall be let into immediate possession thereof, and that, in case the same, or any part thereof, shall be redeemed, such purchaser or purchasers shall account for the rents, issues and profits thereof, to the person or persons redeeming; and it was further ordered, that the costs of this proceeding should be paid out of the proceeds of the sale of the premises, and that, in case the same should be purchased by the complainant, and should not be redeemed, Bennett shall pay complainant the costs aforesaid, and that he have execution against Bennett therefor.

From this decree plaintiffs in error prosecute this writ of error, and assign as errors the following:

1. The court erred in rendering a decree in favor of the complainant, Matson.

2. The court erred in decreeing the mortgage of said complainant paramount to that made by Shumway to Whittington, and that said Whittington mortgage be satisfied and subject to the mortgage of the complainant.

3. The court erred in decreeing the mortgage of the complainant superior to the lien held by the defendant Chapman, as assignee of the defendant Bennett and in declaring the Bennett decree satisfied.

4. The court erred in decreeing the sale of the premises described in the decree, for the payment of the amount thereby found due from Shumway to the complainant.

5. The court erred in rendering a decree subjecting the rights of the defendant Flint to those of the complainant.

6. The court erred in rendering a decree, subjecting the rights of the defendant Chapman to those of the complainant.

8. The court erred in not specifically determining the rights of the complainant and the different parties defendants, to the premises in dispute.

9. The amount found due to complainant by the decree is greater than is warranted by the evidence.

10. The court erred in decreeing the right of immediate possession to the purchaser, under the complainant's sale.

11. The court erred in rendering a decree against the defendant George Bennett for costs.

12. The decree is insufficient, uncertain and ambiguous, is contrary to law and equity, and contrary to the evidence.

13. The court erred in refusing to suppress the depositions of Joseph Mercer.

The last assignment of error is not pressed by the plaintiffs in error, and we will confine our attention to the important points raised on the others, and argued by counsel.

The first question which presents itself for consideration is, was the agreement between Matson and Bennett within the statute of frauds? That there was such a verbal agreement as set out in the bill of complaint, is sufficiently established by

the testimony of Cyrus Bryant, Joseph Mercer and Joseph I. Taylor.

This agreement, from all the proof, must be considered as executed, as between themselves, within the year, and thereby it is taken out of the operation of the statute. The purchase by Bennett of the south eighty, and by Matson of the north eighty, was at one and the same time, and both within the year in which the agreement was made; and though it might be defeated by a redemption thereafter to be had, still, the agreement itself, as between the parties, was consummated within one year; consequently, the statute of frauds and perjuries can have no application.

There are divers interests to be considered and disposed of in this case. There are the interests of Chapman, who took the assignment from Bennett, after he, Bennett, had made this agreement; then there is the interest of Claramon Flint, who took a quitclaim deed from Whittington after the decree passed in favor of Bennett, and after the agreement between Matson and Bennett.

Now, as to Chapman, he took the assignment of the decree subject to the equities existing between Matson and Bennett, Matson being a party to the decree, and that was a circumstance calculated to put Chapman on inquiry as to the nature and extent of Matson's equities. As against Chapman and Bennett therefore, Matson has the better equity, and ought to be protected in it.

As to Claramon Flint, she did not set up in her answer, and prove that she was the assignee of the notes from Shumway to Whittington, therefore the question of merger cannot arise. The notes were not offered in evidence. The deed from Whittington to her, of itself, merely conveyed the equity of redemption. The record does not show she was the assignee of the mortgage which would pass by the assignment of the notes, nor does it show that the notes are unpaid, consequently, she can set up no claim to defeat Matson.

But the decree of the court is erroneous in this, it provides for delivery of possession of the premises to Matson before a

deed is made. This we conceive to be in contravention of the statute allowing a redemption from such sales. No case can be found where a party has been put in possession who was a purchaser at a judicial sale, before a deed has been executed to him by the officer selling. Until the purchaser obtains his deed, he is, for most purposes, a stranger to the possession, and if, after he obtains a deed, possession is refused him, he must resort to his action of forcible detainer under the statute, or seek some other appropriate remedy. We have not deemed it necessary to consider the errors in the order they were assigned, but only to express our views on the principal points in the case. The decree must be reversed, because of the error in putting the party in possession before he has obtained his deed, and the cause must be remanded.

*Decree reversed.*