JOHN J. HANBERG, County Treasurer, Appellee, vs. ADAH
F. BURTON MORGAN *et al.* Appellants.

*Opinion filed June 16, 1914.*

1. INHERITANCE TAX—*what a sufficient showing, of record, that
appraiser was appointed.* The appointment of an appraiser is suf-
ficiently shown by the record where the sworn report of the ap-
praiser recites that he was appointed appraiser on a certain day,
and the order of the county judge approving the report and fixing
the inheritance tax recites that the appraiser (naming him) had
theretofore been duly appointed appraiser under and pursuant to
the statute.

2. SAME—*parties upon whom notice is served are chargeable
with notice of subsequent proceedings.* Owners of property who
have been served with notice of the time and place of the appraisal
of the property for inheritance tax purposes are chargeable with
notice of all subsequent proceedings, including the adjournments
of the hearing from time to time, and it is not necessary that a
new notice be served upon them after each adjournment.

3. SAME—*when it will be presumed that appraiser's report was
filed in the office of clerk of county court.* Where the order of the
county judge directs the appraiser's report to be filed in the office
of the clerk of the county court, an endorsement on the back of
the report reading, "Filed August 28, 1899—Philip Knopf, Clerk,"
raises the presumption that the report was filed in the office of the
clerk of the county court, even though such person was county
clerk as well as clerk of the county court.

4. SAME—*when failure to appoint a guardian ad litem does not
invalidate inheritance tax against minor.* The failure to appoint a
guardian *ad litem* does not, in a collateral proceeding, invalidate
an inheritance tax against a minor, where the minor was person-
ally served with notice of the time and place of the appraisement
and was represented in that proceeding by his regular guardian.

5. SAME—*market value of decedent's property at time of his
death is the basis for fixing tax.* The market value of the property
of the decedent at the time of his death is the basis upon which an
inheritance tax should be fixed, and no changes of title, transfers
or agreements of those who succeed to the estate can affect the
value of the tax, but error in fixing the tax on some other basis
must be availed of by appeal from the order fixing the tax and can
not be availed of in a collateral proceeding to collect the tax.

6. SAME—*section 22 of Inheritance Tax act does not bar suit
to collect tax due for over five years.* The provision of section 22

of the Inheritance Tax act of 1895 requiring that "all inheritance taxes shall be sued for within five years after they are due and legally demandable, otherwise they shall be presumed to be paid, and cease to be a lien as against any purchasers of real estate," merely operates to release the lien which the first part of such section provides shall continue until the tax is settled and satisfied, and was not intended to bar a suit begun to collect the taxes more than five years after they were due and legally demandable. (*Connell* v. *Crosby,* 210 Ill. 380, distinguished.)

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

SAMUEL H. TRUDE, for appellants.

P. J. LUCEY, Attorney General, and THOMAS J. YOUNG, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On April 20, 1906, the county treasurer of Cook county filed a petition in the county court of Cook county praying that Adah F. Burton, Sophia Burton Gagnon and Robert C. Burton be summoned to appear before said court to show cause why they should not pay certain inheritance taxes alleged to be due from them. The petition set forth that the county judge of Cook county did, on August 28, 1899, fix and assess the cash value of the estate passing by the will of S. Lester Burton, deceased, to each of the persons above named, and did fix the tax to which the estate passing to Adah F. Burton was liable at $444.37, the tax to which the estate passing to Sophia Burton Gagnon was liable at $1148.34, and the tax to which the estate passing to Robert C. Burton was liable at $1148.34, and that said amounts, together with interest thereon at the rate of six per cent per annum from January 2, 1896, (being the date of the death of S. Lester Burton,) remain due and unpaid. The respondents were not served with summons until December, 1912. Thereafter Sophia Burton Gagnon paid the tax

alleged to be due from her, but Adah F. Burton and Robert C. Burton appeared and answered the petition, alleging that the order of the county judge fixing and assessing the taxes upon the property and estates passing to them under the will of S. Lester Burton was void for various reasons set out in the answer and which are urged in this court as grounds for reversal. A hearing was had upon the petition and answer, after which the court entered an order finding that the allegations of the petition were true, and that there was due from Adah F. Burton the sum of $444.37 and from Robert C. Burton the sum of $1148.34, together with interest thereon at the rate of six per cent per annum from the date of the death of S. Lester Burton. The court also allowed in this proceeding an attorney's fee of $50 against Adah F. Burton and an attorney's fee of $75 against Robert C. Burton, and ordered them to pay the amounts found due from them, respectively, together with the attorneys' fees allowed against them, within ten days, and that in default thereof they be held in contempt of court. From that order Adah F. Burton (now Adah F. Burton Morgan) and Robert C. Burton have prosecuted this appeal.

Upon the hearing in the county court the petitioner offered in evidence the report made by John A. Watson, as appraiser, assessing and fixing the value of the estate of S. Lester Burton, deceased, and the value of the portions thereof passing to Adah F. Burton, Sophia Burton Gagnon and Robert C. Burton which were subject to inheritance taxes under the act of June 15, 1895. The petitioner also offered in evidence the exhibits filed with said report, the order of the county judge approving the report of the appraiser and assessing and fixing the value of the estate passing to each of said parties and the tax to which the same was liable, and a certificate of the county judge showing that notices were mailed to all parties interested, including appellants, informing them of the amount of tax due from each of the devisees and legatees under the will of S. Les-

ter Burton. Appellants offered no evidence, but relied entirely upon the evidence offered by the petitioner to sustain their contention that the order of the county judge assessing and fixing the taxes was void.

It is first contended that the evidence failed to show the appointment of John A. Watson as appraiser, and that there was therefore no valid appraisement upon which to base the order. While no order of the county judge appointing Watson appraiser was offered in evidence, the report of the appraiser recites that he was on August 5, 1897, appointed appraiser, pursuant to the act of 1895, to fix the fair market value of the property of the estate of S. Lester Burton, deceased, subject to taxation under the said act. The order of the county judge fixing the taxes also recites that John A. Watson had theretofore been duly appointed under and pursuant to the statute, and the report made by Watson, as appraiser, was received and acted upon by the county judge in fixing the taxes. This was sufficient to show the appointment of Watson as appraiser. *Tibbs* v. *Allen,* 27 Ill. 119; *Hess* v. *Voss,* 52 id. 472; *Crane* v. *Stafford,* 217 id. 21.

It is next urged that the appraiser did not give notice to appellants of the time and place he would appraise the property passing to them under the will of S. Lester Burton. That a notice was given by the appraiser that he would, on February 18, 1899, at ten o'clock A. M., at his office, room 411, 175 Dearborn street, in the city of Chicago, appraise the property of the estate of S. Lester Burton subject to taxation under the act of 1895, appears from his report, which recites that he sent such notice by mail to all persons known to have or claim an interest in the property of the decedent subject to assessment. No evidence was offered by appellants to show that they did not receive the notice which the appraiser reports he sent to them, but their contention seems to be that as the report shows that the appraisement was made on August 28, 1899,

instead of on February 18, 1899, and as it fails to show that the appraiser gave any notice that he would appraise the property on that date, it therefore fails to show that they were notified of the time when and place where the appraisement was to be made. The appraiser's report recites that at the hour fixed, on February 18, 1899, and thereafter from time to time pursuant to adjournments regularly had, he proceeded to take evidence in writing, under oath, of witnesses, and to appraise the property. The testimony taken is attached to the report as an exhibit and indicates that the hearing was concluded August 23, 1899. After being served with due and proper notice that the appraiser would, on February 18, 1899, at his office, proceed to make the appraisement, if appellants desired to be heard in the matter of the appraisement it was their duty to appear at the time and place specified in the notice, and thereafter at such times and places to which the proceedings might be adjourned. After being served with notice to appear they were chargeable with notice of all subsequent proceedings, including adjournments from time to time, of which they would have had knowledge had they appeared at the time and place specified in the notice. No new notice was necessary to be served upon them of each adjournment. *Niehoff* v. *People,* 171 Ill. 243; 29 Cyc. 1116.

The objection that the notice was ineffectual because it stated that the appraiser, at the time and place specified, would proceed to appraise and fix the value "of the property which said decedent died seized of and which is subject to taxation," instead of stating that he would appraise and fix the value of the portions of said estate passing to each legatee and devisee under the will of S. Lester Burton, is extremely technical and is without merit.

The endorsement on the report showing the filing thereof is signed, "Philip Knopf, clerk," and appellants contend that this endorsement shows that the report was filed in the office of the county clerk instead of in the office of the

clerk of the county court. Such signature, standing alone, might refer either to Philip Knopf, county clerk, or to Philip Knopf, clerk of the county court, and when it appears signed to a certificate of filing endorsed on a document required to be filed in the office of the clerk of the county court, it will be presumed that the word "clerk" refers to clerk of the county court. The cases cited by appellants do not support their contention and are clearly distinguishable from the case at bar. In *McChesney* v. *People*, 174 Ill. 46, *Glos* v. *Woodard*, 202 id. 480, *Glos* v. *Hanford*, 212 id. 261, and *McCraney* v. *Glos*, 222 id. 628, the person holding the offices of county clerk and clerk of the county court, in signing the certificate of filing wrote the words "county clerk" after his name, and it was held that with such an endorsement it could not be presumed that the instrument was filed in the office of the clerk of the county court. The same holding was made in *Drennen* v. *People*, 222 Ill. 592, where, although it appeared from the original instrument, which was certified to this court, that the officer, in signing the certificate of filing, designated himself as "clerk," the record showed that the instrument was "filed in the office of the county clerk and *ex-officio* clerk of the county court of said county."

At the time the proceedings were had to fix the tax to which the property passing to appellants was liable Robert C. Burton was a minor. The record fails to show that any guardian *ad litem* was appointed for him, and it is contended that for this reason the order of the county judge fixing the tax was void as to him. The report of the appraiser shows that certain attorneys representing the Security Title and Trust Company, guardian of the estate of Robert C. Burton, attended the proceedings before the appraiser and were present during the taking of testimony. The minor was therefore represented in the proceedings by his guardian. But conceding that a guardian *ad litem* should nevertheless have been appointed, proceeding to ap-

praise the property and fix the tax without such appointment was a mere irregularity and would not subject the order of the county judge to collateral attack. *Peak* v. *Shasted,* 21 Ill. 137; *Millard* v. *Marmon,* 116 id. 649; *VanMatre* v. *Sankey,* 148 id. 536.

Objection is also made to the method adopted by the appraiser for ascertaining the value of the property passing to appellants under the will of S. Lester Burton. The basis for this objection is the fact, which appears from the appraiser's report, that the property passing to appellants consisted chiefly of undivided interests in real estate which S. Lester Burton and certain other persons owned as tenants in common at the time of his death; that after his death a partition suit was instituted by one of the tenants in common and a division made, whereby a certain tract of real estate was set off to appellants and Sophia Burton Gagnon, and the appraiser appraised the tract so set off to the widow and children of S. Lester Burton and reported the value thereof as the value of the property passing to them under the will of S. Lester Burton, instead of appraising and reporting the value of the undivided interests owned by S. Lester Burton in real estate at the time of his death. The market value of the property of decedent at the time of his death was the basis upon which the taxes should have been fixed, and no change of title, transfers or agreements among those who succeeded to the estate could change the basis upon which the taxes should have been fixed. (*In re Graves,* 242 Ill. 23.) The error, however, in assessing the taxes on the market value of the property set off to appellants and Sophia B. Gagnon in the partition proceeding was one of procedure, and did not render the order of the county judge subject to collateral attack in this proceeding.

The limitation of section 22 of the Inheritance Tax act of 1895 was relied upon by appellants in the county court as a bar to this proceeding. Said section 22 reads as follows: "The lien of the collateral inheritance tax shall

continue until the said tax is settled and satisfied:' *Provided,* that said lien shall be limited to the property chargeable therewith: *And, provided, further,* that all inheritance taxes shall be sued for within five years after they are due and legally demandable, otherwise they shall be presumed to be paid, and cease to be a lien as against any purchasers of real estate." Appellants contend *Connell* v. *Crosby,* 210 Ill. 380, is conclusive of this question in their favor. We think this a misapprehension of the decision. In that case a suit was instituted for the collection of an inheritance tax and no question was raised that it was not begun in apt time. Before the proceeding was concluded, and, as the opinion states, more than five years after the right to institute the proceedings· for the tax accrued, the application was amended, so as to ask that the tax be computed at a different rate. The court said the amendment did not set up a new cause of action but related back to the commencement of the proceeding and was not amenable to the bar of the statute. That was clearly right, but the court did not hold that section 22 would have been a bar to the collection of the tax from the party who was liable therefor if the amendment had been treated as the commencement of a new proceeding. All the court was called' upon to decide, and all it did decide, was, that the proceeding having been instituted within the period of five years from the time the right to institute it accrued, section 22 could not be invoked as a bar. What would have been the effect of section 22 if the amendment had been treated as a new cause of action was not before the court and was not decided. A different question from what was decided in that case is here presented. In this case the order of the county judge imposing a tax was entered August 28, 1899. It was not paid by appellants, and no proceeding appears to have been instituted to collect it until April 20, 1906, nearly seven years after it was assessed. The right of the People to the tax accrued upon the death of S. Les-

ter Burton on January 2, 1896, and the appraisement was made and the order assessing the tax entered in 1899. In our opinion section 22 has no application to a case like this, nor to any case for the collection of a tax as against the person liable for its payment under the statute. By section 22 the lien of the tax is continued until the tax is settled and satisfied and is limited to the property chargeable therewith, provided it is sued for within five years after it is due and legally demandable, but if it is not so sued for it "shall be presumed to be paid, and cease to be a lien as against any purchasers of real estate." It seems to us clear it was not intended that unless the tax was sued for within five years from the time it became due and demandable the People should be barred from its collection from the person liable for the tax. The object of the statute was to bar the lien against the property liable for the tax in the hands of purchasers unless it was sued for within five years. If that is not so the last clause of the proviso is meaningless. The first sentence in the statute makes the tax a lien until settled and satisfied. The first proviso limits this lien to the property chargeable with the tax. The second proviso is, that if the tax is not sued for within five years after due and demandable, it shall be presumed to be paid "and cease to be a lien as against any purchasers of real estate." The language just quoted would be meaningless if it were intended to bar the collection of the tax from the person liable if not sued for within five years. If the collection of the tax from the person liable is barred within five years, then there would have been no necessity for saying that the lien of the tax, as against purchasers of real estate, should cease after five years. Necessarily, if the person liable was released of his liability the lien ceased. What the legislature was dealing with by section 22 was the lien for the tax against the property chargeable therewith. That continued for five years to be a lien against the property, but if it was not sued for

within that time the person liable was not relieved, but the property chargeable with the tax in the hands of a purchaser was relieved of the lien created by the statute. If no bar had been placed to the lien against the property it would have interfered with its sale and transfer, but if the tax was not sued for within five years a purchaser of the property took it discharged of the lien for the tax but the personal liability did not cease. This construction was placed upon a similar statute of the State of Pennsylvania. (*In the Matter of Estate of Cullen,* 142 Pa. St. 18.) A contrary construction was given a similar statute of Tennessee in *Miller* v. *Wolfe,* 115 Tenn. 234, but the reasoning in the opinion in the latter case is not convincing. Under our construction of section 22 it was not a bar to this proceeding.

The court ordered the amounts respectively assessed against appellants to be paid within ten days, together with interest thereon at the rate of six per cent per annum from the death of S. Lester Burton, and also taxed an attorney's fee of $50 to Adah F. Burton Morgan and an attorney's fee of $75 to Robert C. Burton. In this there was no error, as both are authorized by the act of 1895 and the act of 1909 now in force.

Other objections are urged, but they are without merit and are not of sufficient importance to warrant any specific mention thereof.

The order of the county court is affirmed.

*Order affirmed.*

Mr. JUSTICE CARTER having entered certain orders in this case in the trial court took no part in the decision of this cause.