Chicago Joint Stock Land Bank, Appellant, v. Daniel P. McCambridge et al., Appellees.

Gen. No. 8,225.

Heard in this court at the May term, 1930. Opinion filed October 4, 1930.

JOHN A. DOUGHERTY, for appellant; BYRON TYLER and JOHN F. DENISSEN, of counsel.

ARLEY MUNTS, for appellees.

MR. JUSTICE JONES delivered the opinion of the court.

This appeal was taken to review an order of the circuit court of Grundy county, approving the report of a receiver and ordering distribution.

The Chicago Joint Stock Land Bank was the holder and owner of a note for $24,000, executed and delivered to it by Daniel P. McCambridge and his wife, Emma McCambridge, and secured by a mortgage on certain farm lands in Grundy county. A bill was filed to foreclose said mortgage and all proper parties were made defendants. Among them was J. W. McKindley, trustee, under a trust deed executed by the said McCambridges, to secure the payment of four notes aggregating $3,000 with interest. The trust deed was subject to the lien of the above-mentioned mortgage. The notes secured by the trust deed were owned by the First Trust & Savings Bank of Morris, Illinois. The trustee and the holder of the notes secured by the trust deed filed an answer and cross-bill, praying for the foreclosure of the mortgage.

A decree for foreclosure was entered June 2, 1928. It found that the mortgage was a prior lien and the trust deed a junior lien upon the incumbered premises. It found the amounts due the respective parties and directed a sale to pay the indebtedness and costs. On the same day, but prior to the entry of the decree for foreclosure, Arthur W. Buck was appointed receiver to collect rents and profits of the premises during the pendency of the foreclosure proceedings. The appointment was made on motion of the First Trust & Savings Bank of Morris and the said trustee. The land was sold by the master on July 14, 1928, to the complainant, Chicago Joint Stock Land Bank, for the full amount of debt, interest, and costs due the complainant. The master's report of sale was approved the same day. Therefore, unless the premises were redeemed within the time allowed by law, the complainant would be entitled to a deed on October 14, 1929.

The controversy in this case has grown out of an order of court, entered August 25, 1928, authorizing

the receiver to lease the premises for a term beginning March 1, 1929, and expiring February 28, 1930, on the following terms: $5 per acre for pasture land payable October 1, 1929, one-half of the corn, and two-fifths of all small grain. The petition of the receiver for authority to so lease the land recited that the equity of redemption would expire on October 14, 1929, but alleged that all crops on the demised premises would be harvested before that time. Upon the entry of the order granting him such authority, he leased the farm to Vincent McCambridge upon the terms prescribed by the court, except the lease contains no provision requiring the tenant to remove the crops within said time.

On October 14, 1929, 15 months from the date of sale, no redemption had been made, no cash rent had been paid by the tenant, and no corn had been severed. The oats rent consisting of 706 bushels had been paid to the receiver and was stored in a bin on the premises.

A master's deed to complainant was executed October 24, 1929, and recorded October 28, 1929. The record is not clear as to whether the deed was delivered on the date of its execution or not. The receiver filed a report on January 13, 1930, covering the period from the date of his appointment to December 10, 1929. He reported the collection of the oats rent and also the collection of the corn rent from 98 acres, and stated that the corn was fully matured before October 14, 1929, but only a portion thereof had been harvested before October 28, 1929, the date the master's deed was recorded. The report further stated that the cash rent had not yet been paid and prayed that the court would approve the report, fix the receiver's fees, order distribution, and generally direct him as to his duties.

Both banks filed objections to the receiver's report and upon a hearing the court found that only a portion of the corn raised on the premises had been picked

prior to October 28, 1929; that the remainder thereof was then standing in the field fully matured and no longer drawing sustenance from the soil; that none of the corn had been harvested on October 14, 1929, and only 30 bushels had been harvested by October 24, 1929; and that 240 bushels had been severed by October 28, 1929. The court approved the report of the receiver, ordered him to pay the taxes for 1929, charged. the Chicago Joint Stock Land Bank a pro rata amount of fire insurance premium, directing him to collect the cash rent from the tenant, and to sell the rent oats and corn and divide the net proceeds in the following manner: One-third thereof to the complainant, Chicago Joint Stock Land Bank, and two-thirds to the First Trust & Savings Bank of Morris. The appeal was taken by the complainant.

The 12 separate errors assigned on the record by the Chicago Joint Stock Land Bank are so interrelated that many of them can be considered together. The first assignment of error is that the court erred in finding it had jurisdiction of the subject matter and of the parties to the cause. It is urged in this connection that after the period of redemption has expired, a receiver has no right, title, or interest in the lands, or in the crops standing and unsevered. While such rule is well established, it cannot be extended so as to deprive the court of jurisdiction of both subject matter and parties in order that the affairs of the receivership may be finally and equitably concluded. When a court of equity once acquires jurisdiction, it will retain it until the rights of the parties have been determined and adjusted. (*Huston v. Weed,* 242 Ill. App. 495.)

The chancellor erred in authorizing a lease of the premises beyond the expiration of the period of redemption. A purchaser at a mortgage foreclosure sale is usually entitled to possession when he receives his

deed (*Bennett v. Matson,* 41 Ill. 332); and the general rule is that all unsevered crops on the premises at such time go to him. (*Sugden v. Beasley,* 9 Ill. App. 71; 42 C. J. 251, sec. 1896 *et seq.*) So if a receiver makes a lease to a tenant for a term extending beyond the redemption period, without the acquiescence of the purchaser, the purchaser will not be deprived of his right to possession of the land when he receives his deed. Here the purchaser did not openly acquiesce in or assent to the lease, but it failed to object to the order of the court granting authority to the receiver to make the lease. It was the complainant and the moving party in the suit. A party properly in court is chargeable with notice of all subsequent steps taken in the cause. (*Phenix Banking Co. v. Owens,* 250 Ill. App. 1; *Niehoff v. People,* 171 Ill. 243; *Hamberg v. Morgan,* 263 Ill. 616; *West Frankfort Building & Loan Ass'n v. Muir,* 237 Ill. App. 122; *Nostwick v. Kranz,* 240 Ill. App. 1; *Bird-Sykes Co. v. McNamara,* 252 Ill. App. 262.) Where a party to a suit becomes the purchaser at a judicial sale, he is still governed by the rules of procedure applicable to his case and is not to be regarded as a mere stranger to the proceedings. The complainant should have objected to the order of the circuit court authorizing the execution of a lease extending beyond the period of redemption, but it failed to do so and it would now be extremely inequitable to take away from the tenant his portion of the corn crop, simply because he did not sever it before the master's deed was executed and delivered.

If complainant's contention should be sustained it would get the entire crop with the exception of 30 bushels. On the other hand, if it had objected to the entry of the order, the chancellor undoubtedly would not have entered it, but would have authorized a leasing for a term to expire with the period of redemption. Such an order would have protected both the tenant and the receiver.

In view of all the circumstances, we think the chancellor was correct in not awarding all of the standing crop to the purchaser. For the same reasons, the chancellor was justified in directing the receiver to dispose of all crops in order that an equitable distribution of the proceeds of their sale might be made among the parties interested. The tenant was clearly entitled to his share of the crops. The receiver was equally entitled to the landlord's share of the corn and small grain. He was entitled to pasture rent to October 14, 1930, and the court's order concerning a division of such rent, when collected, is substantially correct. There was no error in the court's ruling with reference to the payment of taxes. If complainant was unwilling to accept a transfer of the insurance policy upon a ratable division of the premium, the chancellor should have directed the receiver to cause a cancellation of the policy and a return of the unearned premium. The expense of carrying insurance during the period of redemption should be borne by the receiver and the court should not have imposed any of it upon the purchaser. However, in view of the fact that the purchaser was given the privilege of accepting the policy for his own use or of causing it to be canceled and receiving the return premium, the error in the court's order is not sufficiently grave to work a reversal.

The order directing the grain rents to be divided between the receiver and the complainant in the proportion of two-thirds and one-third appears equitable and just.

We regard the order of the chancellor as being substantially correct and it is therefore affirmed.

*Affirmed.*